REL: January 5, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024
———————————————

### CL-2023-0260
———————————————

**Mile High, LLC, Pate Holdings, Inc., and Luther S. Pate IV**

**v.**

**Flying M Aviation, Inc.**

**Appeal from Jefferson Circuit Court**
**(CV-21-903098)**

MOORE, Judge.

Mile High, LLC, Pate Holdings, Inc., and Luther S. Pate IV (referred to collectively as "Pate") appeal from a judgment entered by the Jefferson Circuit Court enforcing a $50,000 settlement agreement that Pate had reached with Flying M Aviation, Inc. ("FMA"). The circuit court determined that an impostor had defrauded Pate by causing it to wire

the settlement proceeds to the impostor's bank account but concluded that Pate still must pay the proceeds to FMA. We affirm the circuit court's judgment.

Background

FMA commenced a civil action against Pate seeking damages for an alleged breach of contract. The parties negotiated a settlement of the case that required Pate to pay FMA $50,000. On July 12, 2022, at 12:59 p.m., Lee Gresham, FMA's counsel, sent Linda Peacock, Pate's counsel, a message through his e-mail account directing Pate to wire the settlement proceeds to an account at SouthPoint Bank in Atlanta, Georgia. Peacock did not receive that e-mail; instead, five hours later, Peacock received an e-mail, ostensibly from Gresham's e-mail account, directing that the settlement proceeds be wired to an account at Chase Bank. On July 14, 2022, Pate wired the settlement proceeds to the Chase Bank account.

An impostor defrauded Pate by "spoofing" Gresham's e-mail account, i.e., by creating a second e-mail account that appeared identical to Gresham's e-mail account and sending Peacock wiring instructions to an account owned or controlled by the impostor. After discovering the fraud, Pate disputed that it still owed FMA the settlement proceeds. On

2

August 9, 2022, FMA filed a motion to enforce the settlement agreement, and Pate responded to that motion on September 7, 2022, and November 15, 2022. On February 1, 2023, the circuit court entered a judgment enforcing the settlement agreement. The circuit court ordered Pate to tender the settlement proceeds to FMA within 30 days. On February 27, 2023, Pate filed a postjudgment motion to "alter, amend, or reconsider" the judgment, which the circuit court granted in part by amending its findings of fact and denied in part by maintaining its original conclusion and enforcing the settlement agreement. Pate timely filed its notice of appeal to this court on April 27, 2023.

Issue

In the final judgment, the circuit court determined that this case presented an issue of first impression for this jurisdiction regarding who should bear the loss when the fraudulent conduct of a third party causes a party to breach a contract. In its judgment, the circuit court cited two unpublished opinions from other jurisdictions -- Parmer v. United Bank, Inc., (No. 20-0013, Dec. 7, 2020) (W. Va. 2020) (not reported in South Eastern Reporter), and Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc., (No. 8:14-cv-2052-T-30TGW, Aug. 18, 2015) (M.D. Fla. 2015)

3

(not reported in Federal Supplement) -- in applying the "impostor rule" to conclude that the party who was in the best position to prevent the fraud by exercising reasonable care should bear the loss. Pate does not argue that the circuit court erred in concluding that the impostor rule should govern the dispute. Pate argues only that the circuit court erred in determining that Pate was in the best position to prevent the fraud in this case. Pate asks this court to review the evidence presented to the circuit court, to determine that FMA was in the best position to prevent the fraud, and to reverse the judgment requiring Pate to tender the settlement proceeds to FMA.

## Standard of Review

Ordinarily, this court cannot reweigh the evidence before a trial court to make a factual finding; however, when a trial court enters a judgment enforcing a settlement agreement based on documentary evidence alone, this court reviews the evidence de novo. See Phillips v. Knight, 559 So. 2d 564, 567 (Ala. 1990). In this case, the circuit court did not receive any oral testimony; the circuit court considered only the exhibits and affidavits attached to the motion to enforce the settlement agreement and the response to that motion. Accordingly, this court will

4

review that evidence and make its own independent determination as to the facts.

Facts

The exhibits attached to the motion to enforce the settlement agreement show that Gresham communicated with Peacock about the settlement in a single e-mail chain ("the e-mail chain"). After the parties had agreed to the terms of the settlement, Peacock sent an e-mail to Gresham in the e-mail chain inquiring as to how the settlement proceeds should be delivered to FMA. Gresham responded within the e-mail chain, indicating that the funds should be wired and that wiring instructions would follow once FMA executed the settlement agreement. FMA executed the settlement agreement on July 12, 2022. At 12:59 p.m. on July 12, 2022, Gresham sent an e-mail to Peacock, in the e-mail chain, with the wiring instructions. Peacock never received that e-mail. Five hours later, Peacock received from the imposter account a standalone e-mail, which was not a part of the e-mail chain, containing the fraudulent wiring instructions.

The fraudulent e-mail appeared identical in form to the e-mails that had been sent by Gresham in the e-mail chain, using the same e-mail

account identifiers employed by Gresham. The wiring instructions directed Pate to wire the funds to a Chase Bank account located in Houston, Texas, and designated the beneficiary as the Birmingham law firm that employs Gresham. Tavis Turner, an information-technology specialist who works at that law firm, stated in his affidavit that the fraudulent wiring instructions contained resolution and font discrepancies, but those discrepancies do not appear obvious to this court. Based solely on the appearance of the e-mail and the wiring instructions, Peacock had no reason to believe that the e-mail and wiring instructions were inauthentic.

Pate did nothing to verify the wiring instructions. Peacock did not request that Gresham or anyone else at FMA verify the wiring instructions. Peacock forwarded the fraudulent wiring instructions to Daphne Brooks, Pate's bookkeeper, who also did not verify those instructions. On July 14, 2022, Brooks instructed Pate's bank, Synovus Bank, to wire the settlement proceeds to the Chase Bank account. Synovus Bank did not contact FMA or Gresham to verify the wiring instructions. Synovus Bank transferred the proceeds to the designated Chase Bank account at 1:04 p.m. on July 14, 2022.

6

At 1:29 p.m. on July 14, 2022, Gresham received an e-mail, ostensibly from Peacock, stating: "The payment is (sic) been processed awaiting final approval. We will send confirmation as soon as the payment goes out." On July 19, 2022, Gresham received another e-mail, ostensibly from Peacock, stating: "Just an update we are still working on getting final approval, and we should get that in a day or two. Thank you for your patience." On July 25, 2022, Gresham received a third e-mail, ostensibly from Peacock, stating: "Just an update that a wire transfer was initiated by our accountant on Friday but was sent to the wrong information. Please be patient while we fix this issue." Those e-mails were apparently sent by the impostor as part of the scheme, to delay detection of the fraud.

On July 26, 2022, Gresham checked with his law firm's bookkeeper and discovered that the settlement proceeds still had not been received by SouthPoint Bank. Gresham telephoned Brooks to discuss the whereabouts of the settlement proceeds. In their conversation, Gresham informed Brooks that he had discovered that his e-mail account had been "spoofed" because other attorneys had informed him that they had received e-mails that did not sound like they had come from him. After

7

that telephone call, Gresham sent Brooks a follow-up e-mail containing the correct wiring instructions. That e-mail was the first time that anyone associated with Pate had seen those wiring instructions. Brooks responded that she would contact Synovus Bank "and see what we can do to retrieve our $50K that was sent using the wiring instructions from your spoofed email." All attempts to rescind the wire transfer of the settlement proceeds to Chase Bank were unsuccessful.

Also on July 26, 2022, Brooks contacted an information-technology-support company to investigate Peacock's e-mail account. The company could not locate the original e-mail containing the correct wiring instructions and determined that it had never been delivered. The company also determined that Peacock's e-mail account had not been compromised and that any problem must have originated with Gresham's e-mail account that had been compromised. In her affidavit, Peacock expressed her belief that the original e-mail had been intercepted by the impostor who had had access to Gresham's computer system.

In late July and early August 2022, Gresham sent several e-mails requesting that Pate pay the settlement proceeds to FMA. Having

8

received no response to those e-mails, on August 24, 2022, Gresham contacted Turner, who investigated the matter and determined that the fraudulent e-mail had not originated from Gresham's e-mail account but had been sent from an e-mail account that had been created on July 7, 2022, by an unknown third party. Turner submitted an affidavit stating that neither the firm's server nor the e-mail account maintained by Gresham had been compromised. Turner did not explain why the original e-mail containing the correct wiring instructions had not been delivered to Peacock.

On August 25, 2022, Peacock sent Gresham an e-mail in which she indicated that Pate would not pay FMA the settlement proceeds. Peacock stated that, because Gresham had failed to inform Pate that his e-mail account had been spoofed, Pate had had no reason to suspect the authenticity of the fraudulent e-mail. Peacock explained that, based on those circumstances, the payment to the impostor account had satisfied Pate's contractual obligation under the law, citing Bile v. RREMC, LLC, (No. 3:15cv051, Aug. 24, 2016) (E.D. Va. 2016) (not reported in Federal Supplement). Peacock maintained that FMA should be held responsible for the loss. FMA denied any responsibility for the loss because, it

9

argued, Gresham had sent the correct wiring instructions and the "spoofing" of his e-mail account was beyond his control.

## Analysis

Like the circuit court, we determine that Pate was clearly defrauded. Pate reasonably relied on the fraudulent e-mail sent by the impostor when it sent the wire transfer because the impostor had somehow prevented Pate from receiving the correct wiring instructions and Pate could not have detected the fraud based on the alleged discrepancies in the wiring instructions and the mere fact that the instructions came in a standalone e-mail separate from the e-mail chain between Gresham and Peacock. FMA was also defrauded. FMA has yet to receive the $50,000 in settlement proceeds due under the terms of the settlement agreement because Pate was misled into sending the proceeds to the wrong bank account. FMA did not participate in the fraud, but it is a victim of the fraud.

Pate did not receive conflicting wiring instructions, as was the case in Arrow Truck Sales, Inc., supra. Nevertheless, we conclude that Pate was in the better position to have prevented the fraud. Even conceding that a reasonable person would not have detected the signs that the e-

mail and wiring instructions were fraudulent, it remains that Pate was wiring a large sum of money as settlement proceeds. Under the circumstances, Pate should have verified the wiring instructions before executing the wire transfer, which it easily could have done. Because Pate did not contact Gresham or anyone else at FMA to verify the wire-transfer instructions, FMA was completely unaware of the fraudulent wiring instructions before the wire transfer was executed; therefore, FMA could not have prevented it from occurring.

Pate contends that the security of FMA's counsel's computer system had been breached in a sophisticated hacking scheme and that Gresham "became aware that the account had been hacked, or in his words, 'spoofed,' but did not alert [Pate] to that fact until twelve (12) days after the wire transfer was sent." Pate's brief, p. 20. However, the evidence in the record indicates that no one hacked into Gresham's e-mail account to send the fraudulent e-mail; instead, the fraudulent e-mail was sent from a separate e-mail account that had been created by an imposter on July 7, 2022, to appear identical to Gresham's e-mail account. Pate presented no evidence indicating that FMA's counsel was aware of that "spoofing" in time to prevent the fraud. In the July 26, 2022, telephone call with

11

Brooks, Gresham acknowledged that his e-mail account had been "spoofed," but Pate did not produce any evidence as to when Gresham came to that realization. The evidence shows that the impostor created the "spoof" e-mail account on July 7, 2022, and that, at some point thereafter, the impostor sent fraudulent e-mails out to other attorneys. To prove its contention, Pate would have had to establish that those e-mails were sent, and that Gresham discovered the "spoofing," before July 14, 2022. The record does not contain any such evidence, and we cannot infer that it exists.

Under the "imposter rule," the party who was in the best position to prevent the fraud by exercising reasonable care suffers the loss. See Arrow Truck Sales, Inc., supra (citing U.C.C. § 3-404(d);[1] State Sec. Check Cashing, Inc. v. American Gen. Fin. Servs., 409 Md. 81, 972 A.2d 882 (Md. Ct. App. 2009)). We recognize that, in this case, it would have been difficult for either party to have discovered the fraud before it was completed, but we conclude that, based on the particular facts of this case, Pate was in the best position to prevent the fraud by exercising

---

[1]Alabama has enacted the same provision in its version of the Uniform Commercial Code. See Ala. Code 1975, § 7-3-404(d).

12

reasonable care to verify the wiring instructions before executing the wire transfer. The circuit court did not err in granting the motion to enforce the settlement agreement and in ordering Pate to tender the settlement proceeds to FMA.

The judgment of the circuit court is affirmed.

AFFIRMED.

Thompson, P.J., and Hanson, J., concur.

Edwards and Fridy, JJ., concur in the result, without opinions.